## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Commonwealth of Virginia

v.

Rodney L. Sink

March 5, 2003

Case No. 03-238

BY JUDGE DEAN W. SWORD, JR.

This matter is before the court on the motion of the defendant to dismiss the indictment. Essentially the defendant raises three issues: (1) Virginia Code § 19.2-169.3(C) dictates such a result; (2) that the speedy trial provisions of both the United States and Virginia Constitutions bar this second prosecution; and (3) the common law doctrine of laches acts as a bar to this prosecution.

Because of the factual situation that exists (and will be discussed in detail later in this opinion) there is no argument that Virginia Code § 19.2-243 would dictate a dismissal of this case.

### Facts

The defendant, Rodney L. Sink, was indicted by the August 1996 regular grand jury of this Court on a two-count indictment charging capital murder and robbery. This indictment is numbered CR96-2182 and will be referred to as the 1996 indictment.

Early on in the proceedings, it was determined that the defendant required a mental competency evaluation and, pursuant to Va. Code § 19.2-169.1, such was ordered by the court. (The initial proceedings in the General District Court had included such an examination in January 1996.)

Following the motion of the defendant for a mental evaluation, a series of orders were entered, both continuing the case due to the inability to restore the defendant to competency and continuing his confinement at Western State Hospital. None of these continuances operated to the prejudice of the Commonwealth under the provisions of Code § 19.2-243.

Pursuant to the provisions of Code § 19.2-169.3(C), reports were filed on behalf of Western State Hospital from time to time with the final report being received in September 2000. On October 4, 2000, an order was entered by Judge Piersall which provided *inter alia* that the 1996 indictment "shall be dismissed, without prejudice, pursuant to § 19.2-169.3(C) of the Code of Virginia. . . ." This order was drafted by counsel for the defendant and was endorsed "seen and objected to" by the attorney for the commonwealth. A copy of the order is attached to the opinion as an exhibit.

Following the entry of this order, the defendant was civilly committed as a mental incompetent but later was discharged into the community. On February 6, 2003, the attorney for the commonwealth made a direct presentment to the regular grand jury of this court and the present indictment charging murder and robbery was handed down. This indictment will be referred to as the 2003 indictment.

*Does Virginia Code § 19.2-169.3(C) Prohibit the Commonwealth from Prosecuting the 2003 Indictment?*

Va. Code § 19.2-169.3(C) provides for the dismissal of pending indictments against "an unrestorable incompetent defendant" upon either "the date . . . his sentence would have expired had he been convicted and received the maximum sentence . . . or . . . five years from the date of his arrest . . . whichever is sooner." (It should be noted that there is a version of this statute effective until July 1, 2001, and another that becomes effective as of July 1, 2001. We do not have to reach a decision as to which applies, since subpart C is the same in each version.)

We shall also observe that, since capital murder and robbery each carry a maximum punishment in excess of five years, the operative date that was applied in the 1996 case was five years.

To begin, we note that there is no express language in this statute that mandates a dismissal "with prejudice" to the right of the Commonwealth to seek a new indictment at a later time. Clearly, the legislature has the right to direct that a defendant be forever barred from criminal prosecution. Virginia Code §§ 19.2-243 and 19.2-8 are such statutes. While § 19.2-8 deals with misdemeanors only, § 19.2-243 expressly exempts "insanity or by reason of

his confinement in a hospital for care and observation" from being part of the statutory time computation to determine a speedy trial.

We can only conclude that the legislature knows how to deal with how mental illness shall affect a criminal prosecution. In drafting § 19.2-169.3(C), the legislature did not elect to bar subsequent indictment even though it could have.

When we combine this with the fact that the order entered by this court at the behest of the defendant dismissed the 1996 indictment "without prejudice," the defendant may not use this statute to set up a defense to the 2003 indictment.

*Does Either the United States Constitution or the Virginia Constitution Bar This Prosecution under Principles of Denial of Speedy Trial?*

Amendment VI to the United States Constitution provides "In all criminal prosecution, the accused shall enjoy the right to a speedy trial and public trial. . . ."

Article I, § 8, of the Constitution of Virginia provides "and he shall enjoy the right to a speedy trial and public trial. . . ."

The constitutional language is in all essential parts identical. While both the Virginia legislature and the Congress of the United States have passed speedy trial statutes (Virginia Code § 19.2-243 and 18 U.S.C. § 3161 et seq.), we have already observed the exception contained in the Virginia statute relating to insanity, and the federal statute applies only to prosecutions conducted in the U.S. District Courts for violations of federal law. We must therefore look to the reported decisions of the appellate courts.

A review of the decisions of the United States Supreme Court reveals two important principles: (1) the Sixth Amendment right to speedy trial applies to the states, *Kopfer v. North Carolina*, 386 U.S. 213 (1967), and (2) there is no "bright line" rule that establishes, on constitutional grounds, a standard for what constitutes a speedy trial, *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972).

On the other hand, *Barker, supra,* seems to be the seminal case that responds to what the Constitution requires and how that requirement is to be applied in a given case.

The *Barker* opinion was handed down in 1972 and was a review of a murder trial from Kentucky that for various reasons (two hung juries, two reversals by Kentucky appellate courts, a rural trial court that had only three terms per year, and numerous continuances for one reason or another) took more than five years to conclude.

Justice Powell noted that no "bright line" rule could be established and the court could:

> do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right [to a speedy trial] . . . we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Barker* at p. 530. The opinion then goes on to expand upon each factor.

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the impression of the right to speedy trial, the length of delay that will provide such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.
> . . .
> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker* at pp. 530-31.

While I have omitted the section discussing the defendant's assertion of his right, we may note that there is a requirement that the defendant raise the issue and conversely he may also execute a knowing waiver of this right.

Finally the court addresses the question of prejudice:

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker* at p. 532.

In summation Justice Powell tries to tell us how we are to engage the issue at the trial level:

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interests in a speedy trial is specifically affirmed in the Constitution.

*Barker* at p. 533.

Before deciding our case, we must also determine whether the Virginia courts are satisfied with *Barker* or are there other criteria we must also apply. A review of the applicable Virginia authorities determines two significant points:

(1) *Barker v. Wingo, supra,* is generally cited as the appropriate Sixth Amendment treatment of this issue. See *Johnson v. Commonwealth,* 252 Va. 425, 429, 478 S.E.2d 539 (1996), and *Whitlock v. Superintendent,* 213 Va. 429, 430-431, 192 S.E.2d 802 (1972);

(2) To the extent that Article I, § 8, of the Virginia Constitution may be different from the Sixth Amendment, that difference is evidenced by Virginia Code §§ 19.2-241 and 19.2-243.

"The defendant's right to a speedy trial is one accorded him under the Sixth Amendment . . . and . . . the Virginia Constitution. This right has been supplemented by Code §§ 19.2-241 and 19.2-243, held to be a legislative interpretation of what constitutes a speedy trial." *Stephens v. Commonwealth*, 225 Va. 224, 229-30, 301 S.E.2d 22 (1983). See also *Knott v. Commonwealth*, 215 Va. 531, 532, 211 S.E.2d 86 (1975); *Brooks v. Peyton*, 210 Va. 318, 321, 171 S.E.2d 243 (1969); and *Hutches v. Commonwealth*, 30 Va. App. 574, 577 (1999).

Thus the solution to our problem comes either from *Barker v. Wingo, supra,* or Code § 19.2-243.

We have already made a determination that Code § 19.2-243 provides no relief to this defendant; therefore, we direct our analysis to *Barker v. Wingo.*

At the outset, we can generalize and note that defendant caused delay can be treated as a waiver of his speedy trial rights or, at the least, not an event that should operate to the prejudice of the state to prosecute criminal behavior. Code § 19.2-243 obviously adopts such a view and enumerates a number of criteria to be applied by the court.

Certainly, no one can blame our defendant for this delay, nor is an argument proffered that he in some way induced his mental incapacity. The fact remained, however, during the five year period that the 1996 indictment was pending, the defendant was incompetent to stand trial, much less face a possible death sentence. Neither side will face any constitutional penalty for that delay.

We can also quickly dispose of the matter of requiring the defendant to raise the issue.

The real question to decide is the one of prejudice to the defense in the pending indictment. It is both interesting and significant that the defense has not argued that the delay will in some demonstrable way effect its ability to construct and present a defense. Failure to show the court a specific difficulty leads the court to conclude that there is no real prejudice to the defense. Most certainly, the defendant would wish to have this matter determined with some finality and the pendency of this case interferes with his life. However, I do not agree that there is a demonstration of prejudice within the context of *Barker*.

Finally, the court is of the opinion that, as fact finder, it should take a global view of all of the circumstances that are presented and ask the question: has the passage of time been of such significance that to try this defendant would offend a reasonable sense of fairness? My answer to that question is no.

*Laches*

The defense of laches "may not be set up as a defense against the Commonwealth acting in its governmental capacity." *In re Dept. of Corrections*, 222 Va. 454, 465 (1981). In this indictment, the Commonwealth is acting in its governmental capacity and nothing further need be said in light of the above case.

Based upon the considerations set out herein, the motion of the defendant to dismiss this indictment is denied.

*Appendix*

## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Commonwealth of Virginia

v.

Rodney Sink

Indictment No. CR96-2182
Charges: Capital Murder; Attempted Robbery

*Order*

Comes now the defendant, Rodney Sink, by counsel, and makes motion for the indictment against him herein to be dismissed, pursuant to the provisions of § 19.2-169.3(C); upon the presentation of evidence; and argument of counsel. Upon consideration whereof, and considering the testimony of Dr. Barbara Haskins, Attending Psychiatrist, Mental Health Center for the Deaf, Western State Hospital, it is ordered that: 1. Rodney Sink is unrestorably incompetent to stand trail on this indictment; 2. The charges under this indictment against Rodney Sink shall be dismissed, without prejudice, pursuant to § 19.2-169.3(C) of the Code of Virginia, 1950, as amended, effective October 3, 2000.

Enter: October 4, 2000
/s/ Von L. Piersall, Jr.
Judge

286

We ask for this:

/s/ William R. Brown
Counsel for Defendant

/s/ James E. Short
Counsel for Defendant

Seen and objected to:

/s/ Ross P. Spicer
Deputy Commonwealth's Attorney