COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Bray
Argued at Norfolk, Virginia

ROBIN KALLEEN RADCLIFF

v.          Record No. 0987-93-1          MEMORANDUM OPINION[*] BY
                                          JUDGE RICHARD S. BRAY
COMMONWEALTH OF VIRGINIA                        JUNE 6, 1995

         FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Frederick B. Lowe, Judge

         Gerard T. Schafer; Jon M. Babineau for appellant.

         H. Elizabeth Shaffer, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on brief),
         for appellee.


     Robin Kalleen Radcliff (defendant) was convicted by jury of

capital murder and conspiracy to commit capital murder.  On

appeal, defendant complains that the trial court erroneously (1)

refused to admit into evidence a videotape of her psychiatric

evaluation, (2) denied her statutory right to a speedy trial, and

(3) admitted the hearsay statements of alleged co-conspirators.

Defendant further contends that the evidence was insufficient to

support the convictions.  We disagree and affirm the judgment of

the trial court.

     Under familiar principles of appellate review, we consider

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom.  Traverso v. Commonwealth, 6 Va. App. 172, 176, 366

S.E.2d 719, 721 (1988).  The parties are fully conversant with

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the record, and a recitation of the facts is unnecessary to this memorandum opinion.

## HYPNOTIC EVIDENCE

It is well established that hypnotic testimony is considered unreliable and inadmissible evidence in this Commonwealth.  See generally Hopkins v. Commonwealth, 230 Va. 280, 289-90, 337 S.E.2d 264, 270 (1985), cert. denied, 475 U.S. 1098 (1986); Greenfield v. Commonwealth, 214 Va. 710, 715-16, 204 S.E.2d 414, 419 (1974).  In Hopkins, the Supreme Court observed that

> [i]t is generally agreed that a person under hypnosis (1) is vulnerable to both conscious and unconscious suggestion, (2) may imagine details to fill gaps in his memory (confabulate) or intentionally fabricate facts to benefit himself or please the hypnotist, (3) may be unable to distinguish fact from fiction, both during and following hypnosis, and (4) may emerge from hypnosis with a strong subjective confidence in his subsequent recollection of the events recalled during hypnosis.

Hopkins, 230 Va. at 291, 337 S.E.2d at 271 (citations omitted).  See generally Archie v. Commonwealth, 14 Va. App. 684, 420 S.E.2d 718 (1992) (trial court properly excluded description of an accused while under sodium amytal).

After viewing the videotape in issue, the trial court determined that "viewing . . . that portion of the tape showing only the hypnosis itself as well as an in-court demonstration of it without any testimony would be of little probative value and carries with it a great risk of fabrication."  The admissibility of evidence rests within the sound discretion of the trial court, and its rulings will not be disturbed on appeal absent a "clear abuse" of such discretion.  Coe v. Commonwealth, 231 Va. 83, 87, 340

S.E.2d 820, 823 (1986). Under the circumstances here, we find that the court properly excluded disfavored evidence.

**SPEEDY TRIAL**

Code § 19.2-243 provides, in pertinent part, that "the accused, if . . . held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months[1] from the date . . . probable cause was found by the district court." Id. However, the statute delineates several circumstances which excuse noncompliance, including delay occasioned "[b]y continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth . . . ." Id. (4). These exceptions are not "all inclusive" and "others of a similar nature are implied" by the statute. Moten v. Commonwealth, 7 Va. App. 438, 442, 374 S.E.2d 704, 706 (1988) (citations omitted). "The exceptions, both express and implied, often look to the defendant's actions that tend to delay the trial." Id.; see Jones v. Commonwealth, 13 Va. App. 566, 570, 414 S.E.2d 193, 195 (1992).

Here, the Juvenile and Domestic Relations District Court found probable cause on November 18, 1991, and defendant was continually in custody until trial commenced on February 9, 1993. In the interim, defendant presented numerous motions to the court which necessarily delayed trial. The first, filed December 9, 1991,

---

[1]"The five month period is computed as 152 and a fraction days." Moten, 7 Va. App. at 441, 374 S.E.2d at 706.

requested access to defendant for purposes of psychiatric evaluation and was followed by like motions and attendant orders on January 22, 1992, June 8, 1992, and July 13, 1992. Additional delays resulted from two continuance motions attributed to defendant.

Clearly, the delay from December 9, 1991, to September 8, 1992, was occasioned by defendant's successive motions related to psychiatric evaluation. These "motions were 'by no means . . . frivolous or wholly without substance[,]' and were acts 'which necessitated a slowdown of the judicial process.'" Jones, 13 Va. App. at 571, 414 S.E.2d at 195 (citation omitted). The motions evinced no concern by defendant for a speedy trial and "remove[d] [her] case from the protections afforded by the statute." Id. Defendant's continuance motion of November 12, 1992, and related order, postponed trial until February 9, 1993. Thus, when responsibility for these delays is properly assessed against defendant, and the related days deducted from the relevant elapsed time, trial was commenced within the statutory period.

Defendant's assertion that her motions did not create a "failure to try the accused" chargeable to defendant because the related orders oftentimes did not recite definite trial dates is also without merit. See Code § 19.2-243. This argument was considered and rejected in Townes v. Commonwealth, 234 Va. 307, 322, 362 S.E.2d 650, 658 (1987), cert. denied, 485 U.S. 971 (1988), and, consistent with Townes, we reject it here.

**HEARSAY**

– 4 –

A conspiracy is "'an "agreement between two or more persons by some concerted action to commit an offense."'" Johnson v. Commonwealth, 8 Va. App. 34, 38, 377 S.E.2d 636, 638 (1989) (citations omitted). The crime is "committed when the agreement . . . is complete, regardless of whether any overt act in furtherance of commission of the substantive offense is committed." Id. "[A] conspiracy . . . may be established by circumstantial evidence," and "a formal agreement need not be shown." Stultz v. Commonwealth, 6 Va. App. 439, 442-43, 369 S.E.2d 215, 217 (1988) (citations omitted).

Once a "conspiracy has been proved, 'the acts and declarations of any of the conspirators, in furtherance of the object of the conspiracy, are admissible evidence against each and all of them, though such acts and declarations were not done and said in the presence of all.'" Amato v. Commonwealth, 3 Va. App. 544, 551-52, 352 S.E.2d 4, 8-9 (1987) (citation omitted). However, "before the co-conspirator's hearsay declaration may be admitted, a prima facie case of conspiracy must be established by evidence independent of the declarations themselves." Rabeiro v. Commonwealth, 10 Va. App. 61, 63, 389 S.E.2d 731, 732 (1990). We accord the factual findings of the trial court "in making [this] admissibility determination . . . the same weight as . . . a finding of fact by the jury." Id. at 64, 389 S.E.2d at 733.

Michael Bourne testified that defendant and Gary Hinojosa entered Bourne's bedroom on the morning of July 28, 1991, and asked to borrow his automobile. When questioned by Bourne, defendant

- 5 -

answered, "We need to borrow your car," "Someone is going to take care of James.[2] . . . Someone is going to shoot James." Bourne responded, "You're just going to have James shot?," and defendant stated, "Well, no. It's going to cost a lot of money." Hinojosa also urged Bourne to allow defendant and himself use of the car. Clearly, both defendant and Hinojosa together wanted the vehicle incidental to a scheme to murder James. Defendant's statements that "someone" was going to murder James and that, "It's going to cost a lot of money," suggests the involvement of a person or persons other than herself and Hinojosa. This testimony provided prima facie evidence of a conspiracy and, therefore, a proper foundation for the admission of the hearsay.

Contrary to defendant's argument, statements of a co-conspirator made after the murder but before payment for the crime were also admissible. "[A] conspiracy is not terminated by commission of the crime until the spoils are divided and the co-conspirators have 'gone their separate ways.'" Stumpf v. Commonwealth, 8 Va. App. 200, 206, 379 S.E.2d 480, 484 (1989) (citation omitted). Manifestly, the conspiracy to murder for hire persisted until the consideration was paid and received, thus concluding the criminal union.

## SUFFICIENCY

The jury's verdict will not be disturbed unless plainly wrong or without evidence to support it. Traverso v. Commonwealth, 6 Va.

---

[2]The victim was James Radcliff, defendant's husband.

App. 172, 176, 366 S.E.2d 719, 721 (1988).  Our review of the record discloses abundant evidence to support the convictions.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>

BENTON, J., dissenting.


I disagree with the majority that Townes v. Commonwealth, 234 Va. 307, 362 S.E.2d 650 (1987), cert. denied, 485 U.S. 971 (1988), supports a holding that the trial judge's failure to initially set a trial date in this case until more than nine months after the finding of probable cause is permissible under Code § 19.2-243. In Townes, the Supreme Court noted that Townes's counsel made the argument "that the first trial date set in his case was March 3, 1986, or some six months and eight days after the district court found probable cause." 234 Va. at 322, 362 S.E.2d at 658. However, the Court stated that it "disagree[d] with Townes." Id. Indeed, in stating the procedural posture of the case, the opinion recites that "[o]n October 16, 1985, Townes . . . moved for a continuance, which was granted by order entered the same date, and trial of the case was continued to December 4, 1985." Id. at 321, 362 S.E.2d at 658 (emphasis added).

Moreover, the Supreme Court ruled in Townes that on "December 23 . . . well within the five-month period, . . . the March 3, 1986 trial date was set 'on motion of both parties by agreement.'" 234 Va. at 323, 362 S.E.2d at 659 (emphasis added). This ruling moots any other argument that Townes might have advanced concerning the denial of a speedy trial. This Court has previously stated that the Supreme Court's ruling on this aspect of the speedy trial claim was "the actual holding in Townes." Baity v. Commonwealth, 16 Va. App. 497, 506, 431 S.E.2d 891, 896 (1993).

In Radcliff's case, the Juvenile and Domestic Relations District Court found probable cause on November 18, 1991. In an order dated September 8, 1992, the circuit court trial judge stated that "by agreement of counsel, this case is continued until December 2, 1992, for trial." The record contains no order prior to September 8, 1992, setting a trial date. Thus, the initial trial date was not even set until more than nine months had passed after a finding of probable cause.

Code § 19.2-241 provides that "[t]he judge of each circuit court shall fix a day of his [or her] court when the trial of criminal cases will commence" and that "the accused . . . shall be tried within the time limits fixed in [Code] § 19.2-243." Thus, Code § 19.2-241 unambiguously requires the trial judge to provide a benchmark "to insure a speedy trial, for the benefit of the accused no less than for the Commonwealth." Benton v. Commonwealth, 90 Va. 328, 332, 18 S.E. 282, 284 (1893). Correspondingly, the Supreme Court has held that "[a] defendant does not waive his right to a speedy trial because he remains silent or does not demand that a trial date be set within the prescribed period." Godfrey v. Commonwealth, 227 Va. 460, 463, 317 S.E.2d 781, 783 (1984).

This Court recognized the importance of setting a trial date when, in Williams v. Commonwealth, 2 Va. App. 566, 347 S.E.2d 146 (1986), we noted that a "trial date scheduled by the court in a criminal case must be documented before we may consider it in evaluating trial delay." Id. at 569, 347 S.E.2d at 148. In Williams, "[t]he record contain[ed] no order or decree reflecting

that the trial court set the trial date."  Id. at 568, 347 S.E.2d

at 147.  In the following statement, this Court expressly

highlighted the role of Code § 19.2-241 in insuring a speedy trial:

> Only the trial court has authority to schedule
> criminal cases for trial.  Code § 19.2-241 . . .
> contemplates an orderly procedure for setting
> criminal cases and expressly places the control of
> that process under the supervision of the trial
> court, not a party litigant.  The policy expressed
> in this provision recognizes the role of the trial
> judge in insuring the prompt disposition of criminal
> cases.

Id. at 569, 347 S.E.2d at 148 (citation omitted).  In the absence

of any indication in this record that the trial court set a date

for a trial to occur within the prescribed five month period, it is

illogical to charge Radcliff with a delay of the trial for motions

made prior to the setting of the trial date.

In a case with analogous circumstances, the Supreme Court of

Indiana held that a defendant's agreement to a continuance prior to

the setting of a trial date could not be attributed to the

defendant for purposes of the speedy trial statute.  State ex. rel.

O'Donnell v. Cass, 468 N.E.2d 209, 211 (Ind. 1984).  The court

stated that in the absence of a set trial date, a "defendant . . .

can only assume that when a trial date is finally set it will

conform to the limitations of the [speedy trial] rule."  Id.

In view of the absence of evidence that a date was set for

Radcliff's trial to occur within the prescribed five month period,

I would hold that the record is insufficient to sustain the

Commonwealth's burden of proving that Radcliff caused the delay in

trying the case.  I, therefore, dissent.